UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JORGE ROSADO,

    Plaintiff,

v.                                  Case No: 6:16-cv-1345-Orl-37TBS

UP DEVELOPMENT COMPANY, LLC,
UP FIELDGATE US INVESTMENTS -
FASHION SQUARE, LLC and FSM
MAINTENANCE, LLC,

    Defendants.

---

## REPORT AND RECOMMENDATION

Pending before the Court is the parties' Joint Motion to Approve Settlement Agreement and for Dismissal with Prejudice (Doc 45). Upon due consideration, I respectfully recommend that the motion be **GRANTED,** with a caveat, as set forth below.

### Background

Plaintiff filed a complaint alleging that Defendant UP Development Company, LLC ("Development") and Defendant UP Fieldgate US Investments–East Colonial, LLC ("East Colonial") employed him as a maintenance worker at the Fashion Square Mall in Orlando, Florida (Doc. 1, ¶¶ 2, 7). Plaintiff complains that these Defendants failed to pay him overtime compensation in violation of the Fair Labor Standards Act, 28 U.S.C. § 2201 *et seq.* (the "FLSA") (Id.). Defendants answered the complaint (Doc. 21) and admitted that Plaintiff provided maintenance and landscaping services at the Mall, that he wore a uniform shirt that said "UP Development–FSM" and that he rode in a vehicle with a magnet on the side that said "UP Development–FSM" (Doc. 38, ¶¶ 5, 14). But, they denied employing Plaintiff, and contended that at all relevant times he was employed by

non-party FSM Maintenance, LLC ("FSM") (Doc. 21 at 3). Plaintiff filed an amended complaint (with leave) which added FSM as a defendant, and substituted UP Fieldgate US Investments–Fashion Square, LLC ("Fieldgate") for East Colonial (Doc. 42). Development and Fieldgate answered the amended complaint, denying the claim and raising affirmative defenses (Doc. 43). FSM answered, admitting that it employed Plaintiff, but denied any violation of the FLSA (Doc. 44).

In his answers to the Court's interrogatories, Plaintiff said he worked twenty (20) hours of unpaid overtime per week and estimated that he was due $6,000 in overtime (and an equal amount for liquidated damages), plus attorney's fees and costs (Doc. 23-1). According to the parties' motion, during discovery, they learned that Plaintiff did not work all of the overtime hours he had initially claimed, and that a "fair and reasonable estimation of the full, average hours he worked" is between zero and ten overtime hours per week (Doc. 45 at 3). Based on this reduced claim, the parties agreed that Plaintiff's total possible "top end" recovery is $3,000 in unpaid overtime, plus liquidated damages and attorney's fees and costs (Id.). The parties have entered into a settlement agreement wherein Defendants agree to pay Plaintiff the $3,000 as unpaid overtime, and an equal amount for liquidated damages, plus $6,000 in attorney's fees and costs, in full settlement of Plaintiff's FLSA claim (Doc. 45-1). The parties' seek Court approval of their settlement and dismissal of this action, with prejudice. The motion has been referred to me for review.

## Discussion

The parties seek review to determine whether their settlement is a "fair and reasonable resolution of a bona fide dispute" over FLSA issues. See Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1354-55 (11th Cir. 1982). If a settlement is not one

supervised by the Department of Labor, the only other route for compromise of FLSA

claims is provided in the context of suits brought directly by employees against their

employers under section 216(b) to recover back wages for FLSA violations. "When

employees bring a private action for back wages under the FLSA, and present to the

district court a proposed settlement, the district court may enter a stipulated judgment

after scrutinizing the settlement for fairness." Id. at 1353 (citing Schulte, Inc. v. Gangi, 328

U.S. 108, 66 S.Ct. 925, 928 n.8, 90 L.Ed. 1114).

The Eleventh Circuit has held that "[s]ettlements may be permissible in the context

of a suit brought by employees under the FLSA for back wages because initiation of the

action by the employees provides some assurance of an adversarial context." Id. at 1354.

In adversarial cases:

> The employees are likely to be represented by an attorney
> who can protect their rights under the statute. Thus, when the
> parties submit a settlement to the court for approval, the
> settlement is more likely to reflect a reasonable compromise
> of disputed issues than a mere waiver of statutory rights
> brought about by an employer's overreaching. If a settlement
> in an employee FLSA suit does reflect a reasonable
> compromise over issues, such as FLSA coverage or
> computation of back wages that are actually in dispute; we
> allow the district court to approve the settlement in order to
> promote the policy of encouraging settlement of litigation.

Id.

Upon review of the tendered agreement,[1] it appears that Defendants have agreed

to pay Plaintiff the full amount of his corrected claim for unpaid overtime, and an equal

---

[1] The parties state, in footnote, that they have entered into a separate agreement, with separate consideration, for release of any other non-FLSA claims (Doc. 45, n.1). This agreement is allegedly completely independent of the FLSA claim and the parties are not seeking court approval of it. As the only claim pled in the amended complaint is the FLSA claim and the parties represent that Plaintiff will receive "the full amount of his alleged unpaid overtime for the FLSA claims," the other agreement does not impact the Court's review of the FLSA settlement agreement.

amount for liquidated damages. Defendants have also agreed to pay $6,000 in attorneys'

fees and costs, noting that the fees and costs were agreed upon separately. See Bonetti

v. Embarq Mgmt. Co., 2009 WL 2371407 (M.D. Fla. Aug. 4, 2009). I find the full

recompense set forth here is fair and reasonable, assuming the parties' settlement

agreement contains no provision that would erode the value of the settlement. In

reviewing the other terms of the agreement, I note that the parties have included three

provisions which are problematic:

### 3. RELEASE OF ALL UNPAID OVERTIME AND MINIMUM WAGE CLAIMS

In consideration of the Settlement Payment described in this Agreement, the payment of the Settlement Payment and other good and valuable consideration, the sufficiency and receipt of which is hereby acknowledged, ROSADO on his own behalf and for his spouse, heirs, legal representatives, agents, attorneys, personal representatives, successors or assigns hereby releases, acquits, forever discharges, holds harmless and promises not to sue the DEFENDANTS, their corporate parents, subsidiaries, related companies, and affiliates or subsidiaries, together with all of their predecessors, successors, and assigns in all past and present representatives, agents, officers, directors, trustees, attorneys, insurers, shareholders, and employees of the foregoing, (collectively "Released Parties") from any and all charges, claims, demands, actions, liens, causes of actions and liabilities of any kind whatsoever, whether known or unknown, suspected or unsuspected, which ROSADO now has, may have or has ever had against the DEFENDANTS or any of the other Released Parties by reason of any and all acts, omissions, events, circumstances or facts existing or occurring up to the date of ROSADO'S execution of the Agreement involving any violations of the overtime and minimum wage provision of the FLSA.

\*\*\*

### 5. REPRESENTATION

ROSADO represents that, other than the Wage Claim, he has no suits, charges, claims, complaints or demands of any kind whatsoever currently pending against the DEFENDANTS or

any of the Released Parties, with any local, state, or federal court or any governmental, administrative, investigative, civil rights or other agency or board seeking to recover damages for alleged unpaid overtime, unpaid wages, or minimum wage violations under the FLSA, the Florida Minimum Wage Act or the Florida Constitution, Art. X. Except to the extent that such waiver is precluded by law, ROSADO further warrants and represents that he will not file, refile, initiate, or cause to be filed, refiled, or initiated any claim, charge, suit, complaint, action or cause of action based upon, arising out of, or relating to any claim, demand, or cause of action released herein, *nor shall he participate, assist or cooperate in any claim, charge, suit grievance, complaint, action or proceeding regarding the DEFENDANTS or any of the Released Parties*, whether before a court or an administrative agency or otherwise, unless required to do so by law relating to the claims released herein. By entering into this Agreement, ROSADO waives, to the extent permissible by law, any right to seek or be entitled to any recovery in any individual class, or collective action or other representative proceeding, judicial, administrative, or otherwise, in any way arising from or relating to any of the matters released under this Agreement, including, but not limited to, any right to participate in the settlement or remedy of any individual, class or collective action. Nothing in this Agreement shall prohibit or restrict ROSADO from: (1) making any disclosure of information required by law; or (2) providing information to, or testifying or otherwise assisting in any investigation or proceeding brought by any federal, state, or local governmental agency.

\*\*\*

## 15. BENEFIT

All of the forgoing shall inure to the benefit of the DEFENDANTS, their corporate parents, subsidiaries, affiliates and related entities, together with all predecessors, successors, and assigns and all past and present representatives, agents, officers, directors, trustees, attorneys, insurers, shareholders, and employees of each of the foregoing, as appropriate, and each of the Released Parties, and be binding upon ROSADO'S heirs, executors, administrators, legal representatives, successors, and assigns.

(Doc. 45-1 – emphasis added).

Judge Byron has observed that, "[t]here is certainly disagreement among the district judges in the Middle District of Florida on the issue of whether a release of claims provision undermines the reasonableness of an FLSA settlement." Monahan v. Rehoboth Hosp., Inc., No. 6:15-CV-1159-ORL40KRS, 2015 WL 9258244, at *1 (M.D. Fla. Dec. 18, 2015) (citing examples). While reasonable minds can (and do) differ in this district, Judge Byron "sides with those decisions holding that a release in an FLSA settlement is generally reasonable so long as it is narrowly-tailored to the wage claims asserted in the complaint." Id., 2015 WL 9258244, at *2 (finding broad general release to be an "impermissible windfall to defendant."). Other decisions, notably, those authored by District Judge Dalton, find:

> Though the parties represent that Plaintiffs will receive additional consideration for the inclusion of the General Release in the Settlement Agreements, the Court no longer approves such consideration because the value of a general release is incalculable. Additionally, as plaintiffs can only compromise FLSA claims on the basis of a "dispute over FLSA provisions," concessions unrelated to the substance of the FLSA claims have no place in FLSA settlements. See Moreno v. Regions Bank, 729 F. Supp.2d 1346, 1351-52 (M.D. Fla. 2010). Indeed, a plaintiff's FLSA claim–which is intended to remedy a defendants' violation of mandatory law– should not be used as leverage to procure a general release of all possible claims. Cf. Lynn's Food, 679 F.2d at 1352 (recognizing that "[t]he FLSA was enacted for the purpose of protecting workers from substandard wages and oppressive working hours"). For the same reasons, a general release may not be used to release a non-party. Even if the parties were to cabin the release to FLSA claims, the Court remains skeptical as to the propriety of releasing FLSA claims against a non-party.

Arguelles v. Noor Baig, Inc., 6:16-cv-2024-Orl-37TBS, slip op. at 2-3 (M.D. Fla. Feb. 24, 2017) (footnote omitted). Even though the release language here appears to be limited to

wage claims, it purports to also release and bind a large swath of non-parties. As such, it is the opposite of narrowly tailored and should not be approved.

Additionally, Provision 5 includes a prohibition that Plaintiff cannot "participate, assist or cooperate in any claim, charge, suit grievance, complaint, action or proceeding regarding the DEFENDANTS or any of the Released Parties, whether before a court or an administrative agency or otherwise, unless required to do so by law relating to the claims released herein." I find this provision to be inappropriate and unsupportable. In the usual course, an employee (or ex-employee) has a First Amendment right to "participate" or "cooperate" (whatever those vaguely defined terms mean) in matters brought by others, except to the extent there may exist a mutual non-disparagement clause (none is present here). Just as confidentiality clauses are inappropriate in the FLSA context, a *unilateral* prohibition against speech related to a wide variety of "released parties" is not enforceable, absent separate and adequate consideration for this forbearance. No such consideration is evident here, and in any event, I have no basis to value what would be adequate consideration for such a restriction.

As written, I find the inclusion of these overbroad provisions to be fatal to a finding of reasonableness. Still, the agreement contains a severability clause which reads provides: "If any provision, clause, phrase, words or word in this Agreement is declared illegal or unenforceable and if the provision, clause, phrase, words or word cannot be modified to be enforceable, then the illegal or unenforceable provision, clause, phrase, words or word shall immediately drop out of the Agreement (to the narrowest extent possible) and become null and void, leaving the remainder of this Agreement in full force and effect." (Doc. 45-1, ¶8). Although I find Provisions 3, 5 and 15 to be unenforceable,

for the reasons stated above, Provision 3 can be modified to make it enforceable, as follows:

3. RELEASE OF ALL UNPAID OVERTIME AND MINIMUM WAGE CLAIMS

> Plaintiff hereby releases and discharges Defendants of and from any and all liability for the wage claims made in this litigation.

As Provisions 5 and 15 are unenforceable and unnecessary, the severability provision can be applied, resulting in the provisions "immediately drop[ping] out of the Agreement." Should these changes be made, I find the resulting agreement to be a fair and reasonable compromise of a bona fide dispute over FLSA issues.

## Recommendation

The parties may either: (1) agree to the suggested changes set forth above and notify the Court of same within the time allotted for filing objections to this recommendation–in which case, I recommend that the Court grant the motion to approve the modified agreement and dismiss the case, with prejudice; or (2) stand on the current version of their settlement agreement, in which case I recommend that the motion be denied.

## Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on August 30, 2017.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

       Presiding United States District Judge
       Counsel of Record
       Any Unrepresented Parties